No. 35,956

CLARENCE W. PAINTER, *Appellee*, v. THE NATIONAL LIFE & ACCIDENT
INSURANCE COMPANY, *Appellant*.

(150 P. 2d 171)

Opinion filed July 8, 1944.

*Patrick W. Croker*, of Kansas City, argued the cause, and *George H. West*, of Kansas City, was on the briefs for the appellant.

*David F. Carson*, of Kansas City, argued the cause, and *David W. Carson*, of Kansas City, was on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action on a life insurance policy. The policy was for $500 on the life of the insured and provided for the payment of an additional $500 if death of the insured should be accidental. The action was to recover on the latter provision.

The petition alleged the issuance of the policy and that on the second day of November, 1940, the insured died as a result of an accident within the meaning of the policy; that by reason of this death plaintiff was entitled to recover $1,000; that the defendant had only paid him $500 and had refused to pay $500. Judgment was prayed for $500.

The defendant answered by denying first that the death of the insured resulted from bodily injuries caused directly and solely through external, violent and accidental means and further alleged that following the death of insured the defendant had paid plaintiff $507.28, being the entire amount due under the policy; and that plaintiff had executed and delivered to defendant a death claim receipt, which was attached to the answer, and that this receipt was in full settlement of all claims under this policy.

The plaintiff replied that the agent of the defendant had stated to him at the time he paid him the $500 that this was all that was due under the policy and that defendant knew at that time that there was $1,000 due under it rather than $500 and that defendant through its agent had made out the receipt for $507.28 for the purpose of cheating and defrauding plaintiff; that the receipt was signed by plaintiff without having read it and that no consideration passed between the plaintiff and defendant at the time the receipt was given for the amount now claimed by plaintiff and that the defendant had wrongfully concealed from plaintiff that insured died as the result of an accident.

At the close of the evidence of plaintiff, defendant demurred to it on the ground that it failed to prove a cause of action. This demurrer was overruled. After the introduction of defendant's testimony the issues were submitted to a jury which returned a verdict in favor of the plaintiff. The motion of the defendant for a new trial was overruled. The court also allowed the plaintiff $200 attorney fees. The appeal is from that judgment and the order overruling the motion for a new trial.

The policy was one with which we are somewhat familiar. On its face it was for a $500 death benefit and contained the following provision:

"Upon receipt of due proof at the company's home office that the insured after attainment of age five and prior to the attainment of age seventy, has sustained bodily injury directly and solely through external, violent and accidental means occurring after the date of this policy and resulting in the death of the insured within ninety days from the date of such bodily injury, . . .

the company will pay in addition to any other sums due under this policy . . . a benefit for death by accidental means equal to the sum insured."

The evidence disclosed that the insured died on November 2, 1940, while undergoing a surgical operation. It also showed that on November 9, 1940, the beneficiary, the plaintiff here, signed a document which was denominated at the top "Death Claim Receipt" and in typewriting near the top of this receipt appears the figures $500; then $7.50; then 22¢. After the $7.50 is a notation "Voluntary Payment." After the 22¢ there is a notation of "Last Prem." then the notation in typewriting $507.28. The receipt states that the beneficiary had received that amount "in full settlement, discharge and satisfaction of all claims or demands of every nature against said company, under or arising out of this policy or contract of insurance."

In his reply the insured, as has been noted, alleged that the company defrauded him by representing to him that $500 was all that was due under the policy when as a matter of fact it knew that $1,000 was due under it and also that there was no consideration for the receipt as to the amount claimed by the plaintiff in this action.

On the trial of the action one of the burdens plaintiff assumed was to prove one or the other of these defenses. He testified that the agent for the company handed him a check at his home for $507.28 and said that the $7.28 was accumulated dividends. At the same time he handed him a receipt which he told him to sign; that plaintiff did not read the receipt but did sign it; that the agent told him that the check was in full of everything that he had coming; that he did not know that the statement to the effect that the payment was in full satisfaction of all claims or demands of every nature against the company was on the receipt and that he would not have signed it had he known that and that he thought when he signed it it was a receipt on the face amount of the policy. He also testified that he did not know at that time when he signed this receipt what caused his wife's death and he learned from a doctor sometime later that her death was accidental; that when he learned this he went to see a lawyer and this suit followed.

The doctor witnesses testified that the insured died a few minutes after an operation for the removal of the thyroid gland had commenced. Their testimony was further than an autopsy disclosed that she was afflicted with what they called "status thymicus lymphaticus;" that this was a peculiar and rare disease that is due to

the enlargement of the thymus gland; that all children have this gland at birth; that it usually disappears when an individual becomes an adult, but is occasionally found in an adult, and when it is so found any sudden shock may cause death; and that in this case the cause of insured's death was the shock of the operation and the fact that she had an enlarged thymus gland, or as the doctors say "status lymphaticus." The two doctors who testified were the anesthetist and a specialist who had treated insured prior to the operation. The doctor who was performing the operation was not present at the trial because he was in the armed service. The hospital record signed by him was introduced, however. His comment entered on this record was as follows:

"The patient died suddenly on the operating table with apparently insufficient reason."

The autopsy revealed typical manifestations of the syndrome of "status thymicus lymphaticus." The insured was referred to the surgeon by the specialist.

It was necessary for plaintiff to establish that he should not be bound by this receipt before he could recover in this action. He pleaded that he should not be bound by it because the agent of the company fraudulently told him at the time he signed it that it was in full settlement of his claim against the company and that the agent concealed from him the fact that there was further liability on the policy by reason of the accidental nature of the death of insured. In order to prove this allegation it was incumbent on plaintiff to prove that the company knew that death was accidental before the check for $507.28 was handed to plaintiff and his signature to the receipt obtained. Counsel for plaintiff does not point out any evidence whatever to prove this fact. We have been unable to find any such evidence in the record. There was a failure of proof on behalf of plaintiff to prove that this receipt was obtained by fraud.

In overruling the demurrer to the evidence the trial court stated that there was no evidence that any consideration was paid plaintiff for the release at the time it was signed by him.

We are unable to reach this conclusion. There was only one liability on the policy. It is true that the liability was to be greater under certain circumstances but all the liability was on the same contract. In fact, the plaintiff had this same idea when he pleaded in his petition that defendant's liability on the policy was $1,000 and only $500 had been paid.

The defendant tendered plaintiff a check in payment of its liability on the policy. Defendant accepted this check and signed the release in question. There is no evidence in this record that a payment for only a portion of the liability was being made. The amount to be recovered was fixed by the terms of the policy. (See 1 C. J. 515.) It follows that there was a consideration for the release and the demurrer of the defendant to the evidence of plaintiff should have been sustained.

The judgment of the trial court is reversed with directions to enter judgment for defendant.